# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**DAWAUN C LOGAN**  **PETITIONER**
*ADC #163357*

V.  CASE NO. 4:21-cv-00043-JTK

**DEXTER PAYNE**
*Director, ADC*  **RESPONDENT**

## ORDER

### I. Background

Before the Court is Petitioner Dawaun C Logan's 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus. *Doc.* 2. Logan is an inmate at ADC East Arkansas Maximum Unit. On January 9, 2017, Logan was charged with aggravated robbery, A.C.A. § 5-12-103, and kidnapping, A.C.A. § 5-11-102. *See Doc.* 8-4 at 1. On March 30, 2017, the State amended the Criminal Information to include a charge of first-degree felony murder, A.C.A. § 5-10-102. *See State v. Logan*, 16JCR-17-15, Amended Criminal Information (Craighead County Cir. Ct. Mar. 30, 2017).[1]

On June 18, 2018, Logan appeared for a plea hearing. At the outset, the prosecutor notified the court it was amending count three in the information from first-degree felony murder to second degree murder in consideration of Logan's plea. *See Doc.* 8-3 at 5. Logan stated he reviewed his guilty plea statement and sentence recommendation with his lawyer and proceeded to plead guilty to the three charges. *See id.* at 6-8.

At first, Logan did not provide a factual basis for his plea:

THE COURT:   Tell me specifically how you violated the law.

---

[1] The Court takes judicial notice of the docket entries and pleadings filed in Logan's underlying State case. Since the State's electronic filing system does not number each docket entry, the Court cites to the title of each filing and the date it was filed.

| | |
|---|---|
| THE DEFENDANT: | I did the crime. |
| THE COURT: | Well, you're gonna have to tell me how you did the crime. Give me details. |
| THE DEFENDANT: | I don't know what you want; I don't know what you want to know. |
| THE COURT: | How did you violate the law? |
| THE DEFENDANT: | By doing -- by doing each charge I did. |
| THE COURT: | Okay. Mr. Bartelt, I'm gonna let you visit with him and see if you can get him to answer my questions. |
| MR. BARTELT: | Sure. |

(Off the record.)

*Id.* at 8.

After the pause in the proceeding, Logan returned and stated his involvement in the robbery. He said he "went in Dollar Tree, put the gun to her [the victim, Loretta Pixler] head and forced her in the car." *Id.* at 9. He and two others targeted her because one co-defendant's girlfriend worked at the Dollar Tree and told them Ms. Pixler would leave the store with the night's deposit bag. *See id.* at 11. Once Logan forced Ms. Pixler into her car, he told her to drive toward Marion but found out she did not have the deposit bag while they were on the road. *See id.* at 10-11. After he discovered she did not have any money, he told "her to pull over. She pulled over and [Logan] told her to get out. She got out in the ditch… [and Logan] pulled off in her car." *Id.* at 12-13. At this point in the allocution, the prosecutor elaborated on the basis for the murder charge:

| | |
|---|---|
| MR. DEPROW: | The basis for the murder conviction, Your Honor, and again, Mr. Logan may have not have been aware at the time, but Ms. Pixler was abandoned just about five miles north of the Payneway exit on Interstate I-555. They took her car, took her purse, took her cell phone. So she had no means to communicate or no means to travel. It was dark. That's not a – that's an |

2

|               |                                                                                                                                                                |
| ------------- | -------------------------------------------------------------------------------------------------------------------------------------------------------------- |
|               | extremely rural part of the interstate. There's no houses nearby. And so Ms. Pixler, in an attempt to flag down another motorist, was actually struck by the motorist and killed.<br>That's the basis of the murder conviction. |
| THE COURT:    | Okay. Do you understand that?                                                                                                                                  |
| THE DEFENDANT:| Yes, ma'am.                                                                                                                                                    |
| THE COURT:    | Okay. Mr. Bartelt, is there anything else that I have not asked that you think needs to be provided in terms of information at this point?                     |
| MR. BARTELT:  | No, Your Honor. We believe that's the relevant basis for the charges.                                                                                          |

*Id.* at 13-14.

The court then accepted Logan's plea and the recommended sentence of 360 months for aggravated robbery and kidnapping to run concurrent with 240 months for second-degree murder followed by a 120-month suspended sentence. *See id.* at 16, 19.

The officer who originally investigated the scene of the accident provided further details in his accident report: the other motorist "was traveling Southbound in Interstate 555 in a careless and prohibited manner when she struck [Ms. Pixler] who was in the traffic lane. [The driver] stated that she had looked away from the road at her radio. Based on the information and physical evidence collected, I believe that [Ms. Pixler] was illegally in the left traffic lane at night which resulted in her death." *See Doc.* 11 at 7.

Logan did not file a direct appeal or a petition for post-conviction relief in state court. He filed this petition on January 19, 2021 and amended it on March 9, 2021. *Docs.* 2, 11. In all, he contends: 1) His plea was involuntary because he was not informed of the intent requirement for second-degree murder; 2) His lawyer was ineffective for failing to investigate any defenses to the second-degree murder charge; and 3) His lawyer was ineffective for failing to explain to him the

3

intent requirement before he pled. *See Doc.* 2 at 2-4; *Doc.* 11 at 2. On February 9, 2021, Payne filed a Motion to Dismiss Logan's petition, arguing it is both untimely and that Logan's claims are procedurally defaulted. *Docs.* 7, 8.

## II. Timeliness

Payne first argues Logan's habeas petition is untimely. *See Doc.* 8 at 4-5. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) established a one-year time limitation for a state prisoner to file a federal habeas corpus petition. *See Jimenez v. Quarterman*, 555 U.S. 113, 114 (2009). The year "runs from the latest of four specified dates." *Id.* (citing 28 U.S.C. § 2244(d)(1)). Relevant here, the limitations period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review[.]" 28 U.S.C. § 2244(d)(1)(A). Even though Logan was not entitled to a direct appeal, his window for filing an appeal expired on July 18, 2018—thirty days after judgment was entered. *See Camacho v. Hobbs*, 774 F.3d 931, 934-35 (8th Cir. 2015). Therefore, Logan had until July 19, 2019, to file a timely habeas petition.

Logan's petition is clearly untimely—even he concedes "his petition is not within the one year rule." *Doc.* 2 at 1. However, he claims "[s]ensitivity to the injustice of incarcerating an innocent individual should not abate when the impediment is AEDPA's statute of limitations." *Id.* at 1-2. On the other hand, Payne claims "Logan does not argue that he is actually innocent." *Doc.* 8 at 8. However, Logan's statement about "incarcerating an innocent individual" is a clear claim of actual innocence, so the Court will address it.

### a. Actual Innocence Gateway and Applicability to Guilty Pleas

"[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House*, or, as in this case,

4

expiration of the statute of limitations." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). Tenable actual innocence gateway claims are rare, and they require a petitioner to show "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995), and *House v. Bell*, 547 U.S. 518, 538 (2006)) (internal quotations omitted). In the context of a habeas petitioner found guilty by a jury, the actual-innocence exception requires them to come forward with "new reliable evidence" which was "not available at trial through the exercise of due diligence." *Schlup*, 513 U.S. at 324. The district court must then "assess the probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial." *Id.* at 332. The law is clear that "[w]ithout any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Id.* at 316.

The Eighth Circuit has applied the *Schlup* standard, including its new evidence requirement, to a conviction based on a guilty plea. *See Weeks v. Bowersox*, 119 F.3d 1342, 1351 (8th Cir. 1997) (en banc) ("First, the petitioner's allegations of constitutional error must be supported with new reliable evidence that was not presented at trial. Second, the petitioner must establish that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."). Payne argues this new evidence requirement alone disposes of any actual innocence gateway claim since "Logan fails to cite or include such evidence in his petition." *Doc.* 8 at 8. However, the year after *Weeks* was decided, the Supreme Court in *Bousley* omitted "new evidence" from the *Schlup* actual innocence standard in the context of a guilty plea. *See Bousley v. United States,* 523 U.S. 614, 623 (1998). *Bousley* involved a petitioner who pled guilty to "using" a firearm "during and in relation to a drug trafficking crime." *See id.* at 616. Five years

5

after his plea, the Court ruled that the term "use" requires "active employment of the firearm," and therefore, "'a defendant cannot be charged under § 924(c)(1) merely for storing a weapon near drugs or drug proceeds,' or for 'placement of a firearm to provide a sense of security or to embolden.'" *Id.* at 617. Petitioner argued the Supreme Court's new precedent called into question whether he had actually "used" a firearm within the meaning of the statute and claimed his plea lacked a factual basis. The Supreme Court remanded the case to the district court and instructed that the petitioner could make a showing of actual innocence by "demonstrat[ing] that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Id.* at 623 (quotation omitted).

Courts have recognized this omission of the new evidence requirement in *Bousley* and elaborated on why the requirement is incompatible with petitioners who pled guilty. *See e.g.*, *Nickels v. Conway*, No. 1:10-cv-0413, 2015 U.S. Dist. LEXIS 95638, at *24 (W.D.N.Y. July 22, 2015) ("The *Bousley* court's omission of the 'new evidence' language from the *Schlup* test is most reasonably explained by the fact that *Bousley* dealt with a guilty plea rather than a finding of guilt by a jury."); *Jacobson v. Douma*, No. 14-cv-0296, 2015 U.S. Dist. LEXIS 10399, 2015 WL 403879, at *2 (E.D. Wis. Jan. 29, 2015) ("Because the petitioner in *Bousley* pled guilty, all evidence of innocence was 'new' evidence—there was no initial trial at which 'old' evidence was presented."); *Brown v. Miller*, No. EDCV 14-1864 RNB, 2015 U.S. Dist. LEXIS 7005, at *17, 2015 WL 269057 (C.D. Cal. Jan. 21, 2015) ("Since there was no trial, the Court cannot 'assess the probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial.'") (quoting *Schlup*, 513 U.S. at 331-32). This Court follows this reasoning and finds new evidence is not necessary to establish actual innocence after a guilty plea. However, *Bousley* added another requirement for actual innocence claims in this context: "[i]n cases where the Government

has forgone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges." 523 U.S. at 624.

b. **Analysis**

Logan does not rely on a change in the law to assert his claim of actual innocence as the petitioner in *Bousley* did, so it is not clear *Bousley* even applies. *See Brown*, 2015 U.S. Dist. LEXIS 7005, at *18-19 (noting that "petitioner is not basing his actual innocence claim on new case law that post-dates his guilty plea… Thus, it is unclear to the Court that the *Schlup* actual innocence gateway even is available to petitioner here."). Assuming without deciding it does apply, Logan would have to show he is innocent of both second-degree murder to which he pled and first-degree felony murder which was originally charged and foregone as part of his guilty plea. *See Bousley*, 523 U.S. at 624. There are two subsections to second-degree murder under Arkansas law:

> (a) A person commits murder in the second degree if:
> (1) The person knowingly causes the death of another person under circumstances manifesting extreme indifference to the value of human life; or
> (2) With the purpose of causing serious physical injury to another person, the person causes the death of any person.

A.C.A. § 5-10-103. In turn, knowingly is defined as a "person's conduct or the attendant circumstances when he or she is aware that his or her conduct is of that nature or that the attendant circumstances exist"; or "[a] result of the person's conduct when he or she is aware that it is practically certain that his or her conduct will cause the result[.]" A.C.A. § 5-2-202(2)(A) & (B). The record does not reveal which subsection Logan pled to, but there is no evidence he had the purpose of causing serious physical injury to the victim, Ms. Pixler, under subsection (2). As to subsection (1), it is unclear whether Logan's conduct in the underlying offense can amount to second-degree murder because it would require him to have been "practically certain" that leaving Ms. Pixler on the side of the road would result in her death. *See* A.C.A. § 5-2-202(2)(B).

7

Nevertheless, Logan only argues in his petition that he lacked the intent to commit second degree murder. *See Doc.* 2 at 2, *Doc.* 11 at 2. Felony first-degree murder, which he was originally charged with, does not have the same intent requirement:

> (a) A person commits murder in the first degree if:
> (1) Acting alone or with one (1) or more other persons:
> (A) The person commits or attempts to commit a felony; and
> (B) In the course of and in the furtherance of the felony or in immediate flight from the felony, the person or an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life;

A.C.A. § 5-10-102.

Thus, the question is whether "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted" Logan of first-degree felony murder. *See Bousley*, 523 U.S. at 623. First, Logan clearly committed the felonies of aggravated robbery and kidnapping given his narration of his actions at his plea hearing. *See* A.C.A. § 5-10-102(a)(1)(A); *see also Doc.* 8-3 at 9. Second, a reasonable juror could find that leaving Ms. Pixler on the side of the road either occurred in immediate flight from or in furtherance of the attempted robbery and kidnapping since it gave them more time to get away. As to causing death and "circumstances manifesting extreme indifference to the value of human life," an Arkansas Supreme Court case where a defendant appealed his capital felony murder conviction[2] is instructive. *Jefferson v. State*, 372 Ark. 307, 312, 276 S.W.3d 214, 219 (2008). In *Jefferson*, the defendant robbed a convenience store and got involved in a high-speed chase with the police when he fled the scene. *See id.* at 312. While State Trooper Astin chased Jefferson on the interstate, he was told that Trooper Carthron was a couple miles up the road with stop sticks to deflate the fleeing vehicle's tires. *See id.* Jefferson

---

[2] Capital felony murder has the same causation and circumstances requirements as first-degree felony murder: "In the course of and in furtherance of the felony or in immediate flight from the felony, the person or an accomplice causes the death of a person under circumstances manifesting extreme indifference to the value of human life." A.C.A. § 5-10-101(a)(1)(B).

made no attempt to stop when the troopers engaged their lights and sirens and ultimately ran over the stop sticks Carthron had laid. *See id.* Carthron was still on foot and entered the roadway to retrieve the stop sticks when Trooper Astin hit him, resulting in Carthron's death. *See id.*

First, Jefferson argued there was "insufficient evidence to support a conviction for capital murder because he did not 'cause' the death of Trooper Carthron." *See id.* The Arkansas Supreme Court stated the rule for causation:

> 'Causation may be found where the result would not have occurred but for the conduct of the defendant operating either alone or concurrently with another cause unless the concurrent cause was clearly sufficient to produce the result and the conduct of the defendant clearly insufficient.' Ark. Code Ann. § 5-2-205 (Repl. 1997). '[O]ne whose wrongdoing is a concurrent proximate cause of an injury is criminally liable therefor (other elements of liability being present) the same as if his wrongdoing were the sole proximate cause of the harm done.'… For proximate causation, this court must find more than that a given result would not have happened but for the prior occurrence of fact 'A'; rather, we must find that fact 'A' was a substantial and currently operative factor in bringing about the result in question.

*Id.* at 312-313 (cleaned up). Jefferson stated that "Carthron ran into the road to retrieve the stop sticks, in contravention of training and proper usage of the stop sticks." *Id.* at 313. However, the Court agreed with the State "that Jefferson's aggravated robbery, speeding, and fleeing on a busy interstate were substantial and currently operative factors in bringing about Trooper Astin's pursuit and Trooper Carthron's use of the stop sticks." *Id.* at 314.

Applying this discussion of causation to this case, a reasonable juror could find that Logan "caused" Pixler's death. In challenging his intent to commit second-degree murder, Logan relies on the investigating officer's accident report to argue that the actual cause of Pixler's death was her decision to be standing in a lane of traffic and the other driver's carelessness in looking at her radio when she hit Pixler. *See Doc.* 11 at 5-7. This argument can also apply to the causation requirement in first-degree felony murder. Of course, Logan was not driving the vehicle that

ultimately hit Pixler. The trooper who attempted to retrieve the spike sticks in *Jefferson* but made himself vulnerable to getting hit was only in that position because he was attempting to stop Jefferson's car. Likewise, while Pixler did stand in the lane of traffic in what was probably an attempt to flag down another car, the only reason she had to do that was because Logan left her on the interstate to begin with. The same goes for the driver who hit her. While that driver's recklessness probably resulted in her hitting Pixler, Pixler was only on the road because Logan put her there. Thus, a reasonable juror could find that Logan's decision to leave Pixler on the side of the interstate at night without her phone was a substantial and currently operating factor in causing her death.

The defendant in *Jefferson* also challenged whether his offense occurred "under circumstances manifesting extreme indifference to the value of human life." *Id.* at 314. The Arkansas Supreme Court "has defined 'extreme indifference' as deliberate conduct that culminates in the death of another person." *Id.* at 314. Citing an earlier case, the court explained this requirement:

> This court has a line of cases in which it has said that in felony murder 'the culpable intent or *mens rea* relates to the crime of the underlying felony . . . and not to the murder itself.'…
>     …
> This court has observed recently that '[t]he requirement of extreme indifference involves actions that evidence a mental state on the part of the accused to engage in some life-threatening activity against the victim.'… Clearly, our reference to 'against the victim' was not made with respect to a specific victim deliberately or purposefully killed, but generally referred to the person who died as a result of the defendant's perpetration of the felony.

*Id.* at 315 (citations omitted).

Jefferson argued "the accidental killing of one law enforcement officer by another in the course of pursuing a fleeing felon" would not satisfy the requirements, as his conduct did not culminate in Carthron's death. *Id.* at 316. The State argued "that a person who robs someone with

10

a gun, flees with his accomplice and the loot in a stolen car on a busy interstate, and initiates a high-speed chase when pursued by several law-enforcement officers with their lights and sirens blaring engages in life-threatening activity." *Id.* at 316. The Arkansas Supreme Court agreed with the State and found substantial evidence that defendant had acted "under circumstances manifesting extreme indifference to the value of human life." *See id.*

Applying this to Logan's case, Logan did not have to intend Ms. Pixler's death to satisfy this requirement. Instead, he clearly intended to kidnap her. *See id.* at 315. Additionally, a reasonable juror could find that leaving Ms. Pixler on the side of the road with no cell phone on a dark stretch of the interstate after attempting to rob her and kidnapping her at gunpoint was life threatening activity against her. *See id.* at 316.

Since Logan does not show his actual innocence of the more serious original charge, he cannot use the *Schlup*/*Bousley* gateway to excuse the untimeliness of his petition. The Court finds that Logan's petition is untimely, so it need not address procedural default.

### III. Certificate of Appealability

Under Rule 11 of the Rules Governing § 2254 Cases, the Court must issue or deny a certificate of appealability when entering a final order adverse to a petitioner. The question is whether "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted). Petitioner has not made a substantial showing of a denial of a constitutional right, so no certificate will issue.

**IV.     Conclusion**

THEREFORE:

1) Respondent Dexter Payne's Motion to Dismiss Logan's Petition (*Doc.* 7) is GRANTED.

2) Logan's Petition for Writ of Habeas Corpus (*Doc.* 2) is DENIED and this case is DISMISSED WITH PREJUDICE.

3) A Certificate of Appealability is DENIED. *See* 28 U.S.C. § 2253(c)(1)-(2); Rule 11(a), Rules Governing § 2254 Cases in United States District Courts

SO ORDERED this 1st day of July, 2021.

                                                JEROME T. KEARNEY
                                              UNITED STATES MAGISTRATE JUDGE